# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

Nº 17-CV-4967 (RER)

————————————————

MAGNACOUSTICS, INC.,

Plaintiff,

vs

INTEGRATED COMPUTER SOLUTIONS, INC. AND PETER WINSTON,

Defendants.

————————————————————————————

INTEGRATED COMPUTER SOLUTIONS, INC.

Plaintiff-in-Counterclaim,

vs

MAGNACOUSTICS, INC.,

Defendant-in-Counterclaim

and

ADMINISTRATOR FOR THE ESTATE OF WAYNE LEDERER,

Third-Party Defendant.

————————————————————

**MEMORANDUM & ORDER**
July 17, 2020

————————————————————

1

**RAMON E. REYES, JR., U.S.M.J.:**

Before the Court are two cross motions to dismiss.[1] Plaintiff Magnacoustics, Inc. ("Magnacoustics") brought this action against Defendants Integrated Computer Solutions, Inc. ("ICS") and its CEO Peter Winston ("Winston") (collectively, the "ICS Parties") alleging various claims based in contract and fraudulent inducement. (Dkt. No. 1 ("Compl.")). Earlier in this action, the ICS Parties filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12") for failure to state a claim, challenging the fraudulent inducement claim as well as the entire suit on jurisdictional grounds. (Dkt. No. 38 ("ICS Parties' Mot. to Dismiss")). While the Court addressed the jurisdictional issues, the challenge to the fraudulent inducement claim was temporarily set aside. (Dkt. No. 53 ("Jurisdictional Order") at 5 n.2).

In answering the Complaint, ICS asserted counterclaims against Magnacoustics and brought a Third-Party Complaint against Wayne Lederer ("Lederer")[2] for similar claims based in contract and fraud. (Dkt. No. 55 ("Third Party Compl. & Countercl." or "Answer")). Subsequently, Magnacoustics and Lederer (collectively, "the Magna Parties") also brought a motion under Rule 12(b)(6) seeking to dismiss the Third-Party Complaint against Lederer in its entirety as well as certain counterclaims. (Dkt. No. 67 ("Magna Parties' Mot. to Dismiss")).

For the reasons discussed below the ICS Parties' motion to dismiss the fraudulent inducement claim is granted and Magnacoustics' motion to dismiss is granted in part and denied in part.

---

[1] The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). (Dkt. No. 65).

[2] Mr. Lederer has since passed away. Accordingly, the Administrator for Mr. Lederer's Estate has been substituted in his place. (Order dated 5/27/2020).

## FACTUAL BACKGROUND

Lederer is the "sole officer and director" of Magnacoustics, a corporation that manufactures and sells MRI music systems that "allow patients to listen to music while in an MRI machine." (Compl. ¶¶ 1, 8; Third-Party Compl. & Countercl. ¶¶ 10–11). Beginning in 2013, Magnacoustics sought to update its MRI music systems in various ways. (Compl. ¶¶ 17–19; Third-Party Compl. & Countercl. ¶ 12). The updated music system is called MagnaTouch. (Compl. ¶ 17).

Winston is the CEO of ICS, a corporation that provides "software development services." (Compl. ¶¶ 3, 9, 21; Answer ¶¶ 9, 21). In January 2016, Magnacoustics hired ICS to assist with upgrading the MagnaTouch software for a fixed price of $7,500. (Compl. ¶ 24; Third-Party Compl. & Countercl. ¶¶ 2, 15). The parties continued to work together on this project until July 2017. (Compl. ¶ 34; Third-Party Compl. & Countercl. ¶ 50). The events that occurred during this time are in dispute and the subject of this action.

Magnacoustics alleges it hired ICS "to deliver the software needed to operate MagnaTouch." (Compl. ¶ 26). Magnacoustics alleges that between February 2016 and July 2017, ICS "attempted to develop the software" but that aspects of it were defective. (*Id.* ¶¶ 27–29). Despite promises by ICS to fix the defects, Magnacoustics alleges ICS continually failed to deliver the software and eventually "quit the project and the contract." (*Id.* ¶¶ 31–34). Magnacoustics alleges that its client, General Electric Health Care ("GEHC"), agreed to purchase MagnaTouch and that Magnacoustics promised to deliver MagnaTouch to GEHC by July 1, 2016. (*Id.* ¶¶ 35–36). However, because ICS allegedly did not deliver the software by the deadline, Magnacoustics had to continually move the delivery date back. (*Id.* ¶¶ 37–41). Eventually, Magnacoustics alleges it hired a "replacement vendor to develop the software" in order to finish the project. (*Id.* ¶ 42). As a result, Magnacoustics alleges it suffered approximately $1,000,000 in damages. (*Id.* ¶ 43).

3

ICS alleges it was initially hired "to help convert [Magnacoustics'] MagnaTouch software system from a Windows-based system to a Linux-based platform for a fixed price" of $7,500. (Third-Party Compl. & Countercl. ¶¶ 2, 15). "ICS [alleges it] based its initial price for the project on Magnacoustics' representations regarding the readiness of the hardware and the applicability of certain software, which . . . turned out to be false." (*Id.* ¶ 3). ICS further alleges that "[o]nce it was clear that the amount of work required to achieve the conversion to a Linux-based system was far higher than what Magnacoustics had represented, ICS began working on an hourly basis, regularly invoicing Magnacoustics twice-monthly for its services." (*Id.* ¶ 4). ICS alleges "Magnacoustics paid those invoices until approximately October 2016, when" Magnacoustics made its last full and timely payment. (*Id.* ¶¶ 5, 51). Even so, ICS alleges it continued working on the project at the direction of Magnacoustics, receiving "small partial payments" and relying on assurances from Magnacoustics that the "outstanding balance would be paid." (*Id.* ¶¶ 6, 55–57). In July 2017, ICS alleges it completed the project. (*Id.* ¶ 50). ICS alleges that "[a]s of the filing of [ICS'] Counterclaim, Magnacoustics has an outstanding balance of $489,920.21." (*Id.* ¶ 7).

## PROCEDURAL HISTORY

The procedural history of this action is long and complex. On August 11, 2017, Magnacoustics brought this action against ICS and Winston alleging (1) breach of contract, (2) breach of implied-in-fact contract, (3) promissory estoppel, (4) breach of the implied covenant of good faith and fair dealing, (5) unjust enrichment, and (6) fraud in the inducement. (*See* Compl.). Four days thereafter, ICS brought a similar action against Magnacoustics and Lederer in the United States District Court for the District of Massachusetts (the "Massachusetts Action") alleging (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) fraud and misrepresentation, (4) violation of the Massachusetts Consumer Protection Act, and (5) quantum

4

meruit/unjust enrichment. (*See* Complaint ("Mass. Compl."), *Integrated Comput. Sols., Inc. v. Magnacoustics, Inc.*, No. 17-CV-11512 (D. Mass. Aug. 15, 2017), Dkt. No. 1).

In this action, ICS and Winston filed a motion to dismiss for failure to state a claim, arguing the fraudulent inducement claim was without merit and challenging the entire action on jurisdictional grounds. (ICS Parties' Mot. to Dismiss at 1–2). At the same time, Magnacoustics filed a motion to change venue, requesting that the Massachusetts Action be transferred to the Eastern District of New York. (Dkt. No. 42). After briefings by the parties on both motions, Judge Azrack, who previously presided over this case, issued an order addressing both motions. (*See* Jurisdictional Order). Judge Azrack ruled on the parties' competing jurisdictional claims and ordered the Massachusetts Action be transferred to this Court. (*Id.* at 5). Accordingly, the Massachusetts Action was transferred to the Eastern District of New York (the "Transferred Action"). (*See* Dkt. Entry dated 1/8/2019, *Integrated Comput. Sols., Inc. v. Magancoustics*, No. 19-CV-116 (E.D.N.Y. Jan. 8, 2019)).

Judge Azrack did not, however, resolve ICS's and Winston's challenge to the fraudulent inducement claim, which, being the only claim against Winston, determines his status as a party to this action. (*See* Jurisdictional Order at 5 n.2; Answer at 1 n.1). Rather, Judge Azrack expressly noted that the fraudulent inducement issue would be addressed in a separate order. (Jurisdictional Order at 5 n. 2). On March 25, 2019, after Judge Azrack's ruling, both this action and the Transferred Action were reassigned and the parties in both actions consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). (Dkt. No. 65; Consent to Jurisdiction, *Integrated Compu. Sols., Inc.*, No. 19-CV-116, Dkt. No. 35).

In its answer, ICS[3] also raised third-party claims against Lederer and asserted several counterclaims against Magnacoustics, tracking its original complaint in the Massachusetts Action. (*Compare* Mass. Compl., *Integrated Comput. Sols., Inc.*, No. 17-CV-11512 *with* Third-Party Compl. & Countercl.). As such, the Magna Parties and ICS agreed that the Transferred Action was duplicative of this action. Therefore, the parties—Lederer, Magnacoustics, and ICS—filed a joint motion for voluntary stipulation of dismissal in the Transferred Action. (*Integrated Compu. Sols., Inc.*, No. 19-CV-116, Dkt. No. 36). In their motion, the parties note the duplicative nature of the two actions and propose the Transferred Action "should be dismissed to avoid the unnecessary and inefficient use of resources by the parties and this Court." (*Id.* at 2). Importantly, the parties requested the Transferred Action be dismissed "without prejudice to the adjudication of the parties' dispute and rights by and through" this action. (*Id.*). The motion was granted and the Transferred Action closed. (Order Granting Mot. to Dismiss, *Integrated Compu. Sols., Inc.*, No. 19-CV-116, Dkt. No. 37). Around the same time that the parties stipulated to dismiss the Transferred Action, Magnacoustics and Lederer filed in this action a Rule 12(b)(6) motion to dismiss for failure to state a claim. (*See* Magna Parties' Mot. to Dismiss).

Thus, currently before the Court are (1) the ICS Parties' motion to dismiss the fraudulent inducement claim and (2) Magnacoustics' motion to dismiss the Third-Party Complaint against Lederer and certain counterclaims.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) "[a] claimant must plead 'enough facts to state a claim to relief that is plausible on its face.'" *United States v. Tishman Constr. Corp.*, No. 12-CV-03862 (DLI) (RER), 2017 WL 9481015, at *4 (E.D.N.Y. Feb. 2, 2017) (citing Fed. R.

---

[3] ICS only answered on behalf of itself, not Winston, as Winston's status as a party has not yet been determined. (*See* Answer at 1 n.1).

Civ. P. 12(b)(6), *R & R adopted by* 2017 WL 1093190 (Mar. 23, 2017); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, the court must "accept as true all well-pleaded factual allegations in the [pleadings] and draw all inferences in the [non-moving party's] favor." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).

## DISCUSSION

Before the Court are (1) the ICS Parties' motion to dismiss the fraudulent inducement claim and (2) the Magna Parties' motion to dismiss (a) ICS' Third-Party Complaint against Lederer in its entirety, (b) the breach of the covenant of good faith and fair dealing counterclaim against Magnacoustics, and (c) the quantum meruit/unjust enrichment counterclaim against Magnacoustics.

## I.    Conflict of Law

As a threshold issue, the parties disagree as to which state law applies to their claims. The Magna Parties argue that New York law applies, (Dkt. No. 69 ("Magna Parties' Mem. in Supp.") at 8–11), while ICS maintains that Massachusetts law applies. (Dkt. No. 76 ("ICS' Mem. in Opp'n") at 5–6). A federal court with diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). In this case, the Court applies the choice-of-law rules of New York. Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993). While the parties disagree as to which law should be applied, they both agree that New York and Massachusetts law are similar on most of the claims at issue. (Magna Parties' Mem. in Supp. at 10; ICS' Mem. in Opp'n at 6 n.1). The Court agrees that, for the purposes

7

of the two motions to dismiss, New York and Massachusetts law are sufficiently analogous on the claims at issue. Therefore, it is unnecessary to resolve the conflict of law issue at this juncture.

## II. ICS Parties' Motion to Dismiss the Fraudulent Inducement Claim Against ICS and Winston

Earlier in this action, the ICS Parties filed a motion to dismiss Magnacoustics' claim for fraudulent inducement. (*See* ICS Parties' Mot. to Dismiss). However, as noted above, the challenge to the fraudulent inducement claim was temporarily set aside while the jurisdictional issues were addressed. (Jurisdictional Order at 5 n.2). Now, the Court considers the ICS Parties' motion to dismiss. In doing so, the Court takes all of Magnacoustics' well-pleaded facts as true and draws all reasonable inferences in its favor. *Hershey*, 938 F. Supp. 2d at 505.

"On a motion to dismiss, a complaint pleading a claim of fraud must allege each of the elements of the claim as defined by state law, and must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)" ("Rule 9(b)"). *Dessert Beauty, Inc. v. Platinum Funding Corp.*, No. 06 Civ. 2279 (SAS), 2006 WL 3780902, at *5 (S.D.N.Y. Dec. 26, 2006) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). "Rule 9(b) requires that a complaint '[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent.'" *Corley v. Vance*, 365 F. Supp. 3d 407, 456 (S.D.N.Y. 2019) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).

The elements of fraudulent inducement are "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Capax Discovery, Inc. v. AEP RSD Inv'rs, LLC*, 285 F. Supp. 3d 579, 586 (W.D.N.Y. 2018) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir.

1996)) (internal quotation marks omitted); *Okoli v. Okoli*, 963 N.E.2d 737, 746 (Mass. App. Ct. 2012) (quoting *Commerce Bank & Trust v. Hayeck*, 709 N.E.2d 1122, 1126 (Mass. App. Ct. 1999) ("[F]raudulent inducement . . . requires evidence of 'misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.'").

Magnacoustics alleges that "ICS made numerous misrepresentations of fact relating to its ability to provide the software sought by Magnacoustics to induce Magnacoustics to enter into a contract with ICS, to induce Magnacoustics to continue its business relationship with ICS, and to induce Magnacoustics to continue to purchase ICS's services in exchange for fees to be paid by Magnacoustics." (Compl. ¶ 79). The Complaint points to six emails wherein various ICS representatives made the allegedly false statements. (*Id.* ¶ 76).

The ICS Parties argue that the fraudulent inducement claim is (1) insufficiently pleaded to hold Winston individually liable for fraud, (2) duplicative of its breach of contract claim, and (3) "not pled with sufficient particularity" per Rule 9(b). (Dkt. No. 39 ("ICS Parties' Mem. in Supp.") at 9–11).

### A.  Winston's Individual Liability for Fraudulent Inducement

To begin, the ICS Parties are correct that Magnacoustics fails to sufficient alleged Winston's individual liability. None of the allegedly false statements were made by Winston. (Compl. ¶ 76). Rather, Magnacoustisc alleges the false statements by other ICS representatives, namely, Roland Krause, Mark Hatch, and Dustin Kassman. (*Id.*). To the extent Magnacoustics seeks to hold Winston liable for the alleged fraudulent statements made by others, no such argument is presented in the pleadings or motion papers. Therefore, Magnacoustics' fraudulent inducement claim against Winston is not sufficiently pleaded and is dismissed.

**B. ICS' Liability for Fraudulent Inducement**

As noted above, Magnacoustics alleges that "ICS made numerous misrepresentations of fact relating to its ability to provide the software sought by Magnacoustics to induce Magnacoustics to enter into a contract with ICS, to induce Magnacoustics to continue its business relationship with ICS, and to induce Magnacoustics to continue to purchase ICS's services in exchange for fees to be paid by Magnacoustics." (Compl. ¶ 79). In order to sufficiently plead this fraudulent inducement claim, Magnacoustics must allege the elements of fraud and meet the Rule 9(b) specificity requirements. *Dessert Beauty, Inc.*, 2006 WL 3780902, at \*5. Ultimately, Magnacoustics fails to do so.

To begin, the allegedly false statements that Magnacoustics identifies in its Complaint are not statements of fact but "statements of prediction or expectation." *See Naturopathic Labs. Int'l, Inc. v. SSL Ams., Inc.*, 18 A.D.3d 404, 404 (N.Y. App. Div. 2005). "A prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud." *D'Onofrio v. Mother of God with Eternal Life*, 79 N.Y.S.3d 902, 909 (N.Y. Sup. Ct. 2018) (quoting *Chase Invs. v. Kent*, 256 A.D.2d 298, 299 (N.Y. App. Div. 1998)) (internal quotation marks omitted); *von Schönau-Riedweg v. Rothschild Bank AG*, 128 N.E.3d 96, 118 (Mass. App. Ct. 2019) (quoting *Zimmerman v. Kent*, 575 N.E.2d 70, 74 (Mass. App. Ct. 1991)) ("A statement on which liability for misrepresentation may be based must be one of fact, not of expectation, estimate, opinion, or judgment."). Second, while Magnacoustics specifies the false statements, who made them, when, and where, it fails to sufficiently "explain why the statements were fraudulent" pursuant to Rule 9(b). *Corley*, 365 F. Supp. 3d at 456.

For example, Krause says in the first email:

At this point I assume our work completes within 8 business days. Please let me know if there are any other issue (sic) outstanding from your side or whether I have misrepresented

any parties (sic) responsibilities with respect to the outstanding work. Otherwise, we will assume you are in concurrence with this plan.

(Dkt. No. 44-5 ("Email Communications") at 2). In the second email, Hatch says: "I sense we are on our final lap here" and that his "current guess" is that the project will be completed in one week. (*Id.* at 3). In the fifth email, Hatch says: "My sense is that things are starting to come to an end here and I think you are getting a very good product." (*Id.* at 7). Moreover, four of the six allegedly false statements are emails in which representatives of ICS proposed schedules through which they would complete tasks laid out in the email. (*See id.* at 1–2; 4; 5–6; 8–11). None of these statements are statements of fact. Rather, all of the communications are non-actionable predictions, estimates, and opinions.

"[F]alse statements of opinion, of conditions to exist in the future, and promises to perform an act" may be actionable if "the promisor had no intention to perform the promise at the time it was made." *von Schönau-Riedweg*, 128 N.E.3d at 118 (quoting *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 49 (Mass. 2009)) (internal quotation marks omitted); *Sabo v. Delman*, 143 N.E.2d 906, 908 (N.Y. 1957) ("While mere promissory statements as to what will be done in the future are not actionable, it is settled that, if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of a material existing fact.") (internal quotation marks and citations omitted). Magnacoustics attempts to plead such an exception when explaining why the statements were fraudulent. (*See* Dkt. No. 40 ("Magnacoustics' Mem. in Opp'n") at 12–13). Magnacoustics alleges "ICS knew when the statements were made that it did not have the capability to deliver working software to operate MagnaTouch." (Compl. ¶ 77). Magnacoustics even alleges that "[t]his fact was affirmatively and repeatedly admitted by . . . Winston" in April 2017. (*Id.* ¶ 78). However, the six allegedly

fraudulent emails do not contain promises "to deliver working software to operate MagnaTouch." (*Id.* ¶ 77).

The fifth email, quoted in relevant part above, is entirely opinion and does not make any promises whatsoever. (Email Communications at 7). Four of the emails contain lists of very specific completed tasks and action items. (*See id.* at 1–2; 4; 5–6; 8–11). Yet Magnacoustics does not allege that the items on the lists were in fact not completed or that ICS was lying about completing them in the future. It is not clear that the broad and conclusory allegation that "ICS knew . . . it did not have the capability to deliver working software to operate Magna Touch" is enough to meet Rule 9(b) specificity and to overcome the general rule that statements of opinion or expectation are not actionable in relation to these four emails. (Compl. ¶ 77).

Finally, the second email where Hatch stated that he felt "we are on the final lap here," is similar to the others but rather than a detailed plan of action, provides a big picture look at the project. (Email Communications at 3). It contains a proposed "professional services frame agreement" and outlines the amount of money authorized by Magnacoustics and charged by ICS to date for "Phase 1 (port)" and "Phase 2 (enhancements)." (*Id.*). Hatch ends the email by stating: "If there is additional work past May 13th, we would be happy to define a Phase 3 that we both agree upon. Does this seem fair to you? Thoughts?" (*Id.*). The relevance of the allegation that ICS knew it could not "deliver working software to operate MagnaTouch" to the content of this email is unclear.[4] (Compl. ¶ 77). And, again, Magnacoustics does not offer any other explanation for why the statements in this email are fraudulent. As such, Magnacoustics fails to sufficiently plead its fraudulent inducement claim.

---

[4] Part of the confusion stems from the meaning of "port" and "enhancements" as they are used in the email. It is unclear whether—Magnacoustics has not alleged that—these terms are meant to reflect delivery of "working software."

Moreover, as the ICS Parties argue, the fraudulent inducement claim may be duplicative of the breach of contract claim. (ICS Parties' Mem. in Supp. at 10). "To make out a claim for fraudulent inducement that is sufficiently distinct form a breach of contract claim, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 339 (S.D.N.Y. 2017) (quoting *Lorterdan Props. at Ramapo I, LLC v. Watctower Bible & Tract Soc'y of N.Y., Inc.*, No. 11 Civ. 3656 (CS), 2012 WL 2873648, at *17 (S.D.N.Y. July 10, 2012)) (internal quotation marks omitted); *South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.,* Civil Action No. 12-11663 (GAO), 2016 WL 696085, at *24 (D. Mass. Feb. 19, 2016) (quoting *Anderson v. Fox Hill Village Homeowners Corp.*, 676 N.E.2d 821, 823 (Mass. 1997)) ("'[F]ailure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made.'"), *R & R adopted by* 183 F. Supp. 3d 197 (Apr. 28, 2016).

Magnacoustics does not appear to allege any of the three circumstances above. No separate legal duty is alleged. The allegedly fraudulent statements do not appear collateral to the contract. Rather, the alleged statements seem to go directly to the heart of the contractual relationship between the parties: "that [ICS] would deliver working software to Magnacoustics to operate MagnaTouch." (Compl. ¶ 76). Finally, Magnacoustics does not seek any special damages caused by the alleged fraud. In fact, Magnacoustics seeks the same damages as it seeks for its breach of contract claim. (*Compare* Compl. ¶ 85 *with* Compl. ¶ 43). The only difference between the two damages claims is that Magnacoustics seeks an additional $3,000,000 in punitive damages for the fraud. (Compl. ¶ 85). However, punitive damages are, by definition, not "caused by" fraud and

13

therefore do not count as "special damages" that would differentiate the fraud claim from the breach of contract claim. *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, No. 603751/2009, 2017 WL 1201868, at *22 (N.Y. Sup. Ct. Mar. 31, 2017) (finding "no merit in [the] contention that the theoretical availability of punitive damages suffices to establish that the fraud damages are not duplicative of the contract damages").

However, because the existence and terms of the contract(s) between the parties are in dispute, *see* discussion *infra* Section III.B.2, it may be possible for Magnacoustics' fraudulent inducement claim to survive, if it were sufficiently pleaded. Depending on when the Court determines the contract(s) between the parties began and/or ended, if at all, Magnacoustics may have a fraudulent inducement claim.[5] In other words, Magnacoustics could keep a fraudulent inducement claim as an alternative claim to breach of contract. *See, e.g.*, *Thompson v. Horowitz*, 141 A.D.3d 642, 643–44 (N.Y. App. Div. 2016); *Zelby Holdings, Inc. v. Videogenix, Inc.*, 82 N.E.3d 1067, 1073–74 (Mass. App. Ct. 2017).

* * *

Magnacoustics fails to adequately allege its fraudulent inducement claim against either Winston or ICS. As such, ICS' motion to dismiss Magnacoustics' fraudulent inducement claim is granted and the fraudulent inducement claim is dismissed. However, given the Second Circuit's "strong preference for resolving disputes on the merits," and the possibility of overcoming the deficiencies, the Court grants Magnacoustics leave to replead with sufficient allegations. *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011).

---

[5] However, to the extent Magnacoustics seeks relief for harm that occurred between January and May 2016, recovery is barred as it is undisputed that the parties began their relationship in January 2016, (Compl. ¶ 24; Answer ¶ 24), and the alleged misrepresentations currently before the Court occurred during and after May 2016. (Compl. ¶ 76).

14

III.    **The Magna Parties' Motion to Dismiss the Third-Party Complaint and Certain Counterclaims**

The Court now turns to the Magna Parties' motion to dismiss the Third-Party Complaint and certain of ICS' counterclaims. In this section, all of ICS' well-pleaded facts are taken as true and all reasonable inferences are drawn in ICS' favor. *Hershey*, 938 F. Supp. 2d at 505.

A. **Third-Party Complaint: Lederer's Individual Liability to ICS**

Under Federal Rule of Civil Procedure 14 ("Rule 14"), a defendant may implead "a nonparty who is or may be liable to it for all or part of the claim against it" by bringing a third-party complaint. Fed. R. Civ. P. 14(a)(1). Importantly, "'the mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.'" *Allen v. Devine*, No. 09-CV-0668 (ETB), 2012 WL 832298, at *3 (E.D.N.Y. Mar. 12, 2012) (quoting *Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 686–87 (E.D.N.Y. 1994)). Rather, the "third-party action must be 'dependent on' or 'derivative of' the main claim." *Intellipayment, LLC v. Trimarco*, No. 15-CV-1566 (JFB) (GRB), 2016 WL 1239261, at *3 (E.D.N.Y. Mar. 29, 2016) (quoting *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000)). In other words, "the third-party defendant's liability to the third-party plaintiff must be dependent upon the outcome of the main claim or the third-party defendant must be secondarily liable as a contributor to the defendant." *Intellipayment*, 2016 WL 1239261, at *3 (quoting *Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 402 (E.D.N.Y. 2009)) (internal quotation marks omitted). Accordingly, "[t]here are three general types of third-party claims: indemnification, contribution, or subrogation." *Sidik v. Royal Sovereign Int'l Inc.*, No. 17-CV-07020 (ADS) (ARL), 2019 WL 8275239, at *2 (E.D.N.Y. Mar. 5, 2019).

ICS seeks to implead Lederer in his individual capacity based on a contribution theory. (ICS' Mem in Opp'n at 7). ICS argues that "Lederer contributed to any potential liability alleged

15

by Magnacoustics." (*Id.*). Specifically, ICS alleges "to the extent ICS is deemed liable to Magnacoustics for delays in delivering working software as alleged in the Complaint, . . . the delays were due to [Lederer's] failure to inform ICS of certain technical specifications and . . . [his] failure to communicate with ICS." (*Id.*). In addition, ICS brings several independent counterclaims against Lederer through the Third-Party Complaint, including breach of contract and fraud. (Third-Party Compl. & Countercl. ¶¶ 69–98).

The Magna Parties argue that the Third-Party Complaint against Lederer should be dismissed in its entirety because "ICS has not alleged that Lederer may be liable to it for the claims that ICS faces" and that "ICS alleges only independent wrongs against it allegedly committed by Lederer." (Magna Parties' Mem. in Supp. at 8). The Magna Parties inexplicably claim that "ICS does not even bother to address this argument, and therefore, concedes that all its claims against Lederer must be dismissed under Rule 14." (Dkt. No. 77 ("Magna Parties' Mem. in Reply") at 2). Yet, as discussed above, ICS addresses the Rule 14 issue, arguing a contribution theory. (ICS' Mem. in Opp'n at 7).

While a third-party complaint cannot *only* bring independent claims against a non-party, once a third-party plaintiff has successfully alleged a claim to support impleader under Rule 14, it may then join "as many [independent or alternative] claims as it has against" the impleaded party. *Allen*, 2012 WL 832298, at *5 (quoting Fed. R. Civ. P. 18(a)). The opposite is also true: "where those claims that are alleged to support a Rule 14 impleader are dismissed, 'the third-party plaintiff's independent claims . . . must be dismissed as well.'" *Id.* (quoting *Friedman v. Hartmann*, 787 F. Supp. 411, 422 (S.D.N.Y. 1992)). Therefore, here, the sufficiency of entire Third-Party Complaint depends on whether ICS has pleaded a contribution claim against Lederer. Ultimately, ICS fails in this task.

ICS does not affirmatively plead a contribution claim against Lederer in the Third-Party Complaint and Counterclaim. Rather, the first time ICS mentions contribution is in its briefing on this motion. Still, the Court entertains ICS' argument to the extent it is supported by facts pleaded in the Third-Party Complaint and Counterclaim. As noted above, ICS argues that if "ICS is deemed liable to Magnacoustics for delays in delivering working software as alleged in the Complaint . . . the delays were due to [Lederer's] failure to inform ICS of certain technical specifications and . . . [his] failure to communicate with ICS." (ICS' Mem. in Opp'n at 7).

This argument fails because it is based on ICS' potential liability from delays in getting the product to Magnacoustics. In other words, it is based on ICS' liability for contractual claims alleged against it. Yet, contribution is a claim that is only available where the underlying liability is based in tort. *See* N.Y. C.P.L.R. Law § 1401 (McKinney 2019) ("[T]wo or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them."); MASS. GEN. LAWS ANN. ch. 231B § 1 (West 2020) ("[W]here two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them."). "It is well settled that 'the existence of some sort of tort liability is a prerequisite to'" a contribution claim. *Perkins Eastman Architects, P.C., v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 326 (S.D.N.Y. 2011) (quoting *Bd. of Educ. Of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 517 N.E.2d 1360, 1364 (N.Y. 1987)); *Scott v. Rest. Technologies, Inc.*, Civil Action No. 14-CV-12614 (IT), 2015 WL 1962128, at *3 (D. Mass. May 1, 2015) (finding contribution is not permissible where claim is "not essentially one of tort" but rather "contractual in nature"). While Magnacoustics alleges one tort claim against ICS, all other claims alleged against ICS sound in contract. (*See* Compl.). As discussed above, the one tort claim brought against ICS is fraudulent inducement, (Compl. ¶ 79),

which is unrelated to ICS' potential liability for delays in delivering the product and, in any event, has been dismissed.

Therefore, the Court grants the Magna Parties' motion to dismiss the Third-Party Complaint against Lederer in its entirety. However, this dismissal does not eliminate the possibility of joining Lederer in this suit. While ICS failed to implead Lederer under Rule 14, there are other, more appropriate ways that ICS may bring related claims against Lederer. Specifically, Lederer might be joined to ICS' Counterclaim under Federal Rule of Civil Procedure 13(h).

The unique procedural history of this case[6] and the Second Circuit's "strong preference for resolving disputes on the merits" favor providing ICS another opportunity to bring its claims. *Williams*, 659 F.3d at 212–13. Therefore, the Court grants ICS leave to replead its claims against Lederer under the appropriate procedure.[7] *See Kraus USA, Inc. v. Magarik*, No. 17 Civ. 6541 (ER), 2018 WL 4682016, at \*9 (S.D.N.Y. Sept. 28, 2018).

## B. ICS' Counterclaims Against Magnacoustics

With the Third-Party Complaint dismissed, the only remaining issues are the two contested counterclaims against Magnacoustics: (1) breach of the implied covenant of good faith and fair dealing and (2) quantum meruit and unjust enrichment. (*See* Magna Parties' Mem. in Supp. at 4).

---

[6] The Magna Parties specifically requested that ICS' action against them be transferred to this Court. (*See* Dkt. No. 42). The Transferred Action contained procedurally proper claims against Lederer. (*See* Complaint, *Integrated Compu. Sols., Inc.*, No. 19-CV-116, Dkt. No. 1). And when the parties agreed to dismiss the Transferred Action "without prejudice to the adjudication of the parties' dispute and rights by and through" this action, the Magna Parties were agreeing to adjudication of the claims against Lederer here. (*Integrated Compu. Sols., Inc.*, No. 19-CV-116, Dkt. No. 36).

[7] While the Court does not reach the issue, it is worth noting that addressing the procedural deficiencies in ICS' pleadings will not alleviate the substantial burden of alleging Lederer's liability in his individual capacity, which has been challenged by the Magna Parties. (*See* Magna Parties' Mem. in Supp. at 12).

### 1.   Breach of Covenant of Good Faith and Fair Dealing

"'[A] covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance.'" *Janel World Trade, Ltd. v. World Logistics Servs., Inc.*, No. 08 Civ. 1327 (RJS), 2009 WL 735072, at *13 (S.D.N.Y. Mar. 20, 2009) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007)); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 237 (1st Cir. 2013) (quoting *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 924 N.E.2d 696, 703 (Mass. 2010) ("'[E]very contract implies good faith and fair dealing between the parties to it.'"). "'The implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of the agreement.'" *CapLOC, LLC v. McCord*, No. 17 Civ. 5788 (AT) (RWL), 2018 WL 3407708, at *5 (S.D.N.Y. June 12, 2018) (quoting *1357 Tarrytown Rd. Auto, LLC v. Granite Props., LLC*, 142 A.D.3d 976, 977 (N.Y. App. Div. 2016)); *Grundy v. HSBC Bank USA, N.A.*, Civil Action No. 17-11449 (PBS), 2020 WL 1326269, at *25 (D. Mass. Feb. 19, 2020) (quoting *In re McLain*, 604 B.R. 108, 119 (Bankr. D. Mass. 2019)) ("The implied covenant provides that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'").

The Magna Parties argue the breach of the covenant of good faith and fair dealing claim should be dismissed because it "is based on the very same breach of contract allegations, and alleges the identical amount of damages" and thus is duplicative of its breach of contract claim. (Magna Parties' Mem. in Supp. at 16). The Court finds this argument unpersuasive. "The test for duplication respecting a breach of contract claim and a bad faith claim is whether the alleged wrongful conduct was also the predicate for a claim for breach of . . . an express provision of the underlying contract." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 324 (N.D.N.Y. 2017) (quoting *Haym Salomon Home for the Aged, LLC v. HSB Grp., Inc.*, No. 06-CV-

3266 (JG) (JMA), 2010 WL 301991, at *6 (E.D.N.Y. Jan. 20, 2010)) (internal quotation marks omitted); *Sorenson v. H & R Block, Inc.*, No. CIV.A.99-10268 (DPW), 2002 WL 31194868, at *17 (D. Mass. Aug. 27, 2002) (dismissing breach of the covenant of good faith and fair dealing claim as duplicative where alleged conduct was the same as the conduct giving rise to a breach of contract claim). ICS' breach of contract and breach of the covenant of good faith and fair dealing claims are not based on the same underlying conduct and damages. In the Third-Party Complaint and Counterclaim, ICS first alleges the breach of contract claim based on Magnacoustics' failure to pay its outstanding invoices as the parties agreed. (Third-Party Compl. & Countercl. ¶¶ 70–75). ICS then alleges the breach of the covenant of good faith and fair dealing, which does not mention Magnacoustics' failure to pay at all. (*Id.* ¶¶ 76–80). In fact, ICS specifically alleges that "[s]eparate and apart from their breaches of the contract . . . [Magnacoustics] acted arbitrarily, unreasonably, in bad faith, and not in accordance with their expected contractual performance and prevented ICS from reaping the benefits of the contract." (*Id.* ¶ 80).

ICS alleges conduct and harm distinct from Magnacoustics' failure to pay invoices that support this claim. For example, ICS alleges that "up until at least January 2017, Lederer continued to insist that the same chipset hardware used by ICS in developing the software was 'functionally equivalent' to what would be in the eventual target machine, causing ICS to waste dozens if not hundreds of hours trying to determine whether the software code contained bugs or whether the different hardware used by Lederer caused certain errors." (Third-Party Compl. & Countercl. ¶ 25). Moreover, ICS alleges that Lederer imposed false deadlines for the completion of the project "in bad faith." (Third-Party Compl. & Countercl. ¶ 54). "As a result, ICS was under needless pressure and stress to complete the project in a timeframe fabricated by Lederer." (*Id.*). Therefore,

the Magna Parties' motion to dismiss the counterclaim for the breach of covenant of good faith and fair dealing is denied.

### 2. Quantum Meruit and Unjust Enrichment[8]

"To state a claim for quantum meruit, a plaintiff must allege: (1) the plaintiff rendered services to defendant, (2) the defendant accepted such services, (3) the plaintiff expected reasonable compensation, and (4) the reasonable value of such services." *Andrews v. Sotheby Int'l Realty, Inc.*, No. 12 Civ. 8824 (RA), 2014 WL 626968, at *10 (S.D.N.Y. Feb. 18, 2014); *Nardone v. LVI Servs., Inc.*, 113 N.E.3d 854, 861 (Mass. App. Ct. 2018) (quoting *Finard & Co., LLC v. Sitt Asset Mgt.*, 945 N.E.2d 404, 407–08 (Mass. App. Ct. 2011)) ("'To achieve recovery upon the theory of quantum meruit, the claimant must prove (1) that it conferred a measurable benefit upon the defendants; (2) that the claimant reasonably expected compensation from the defendants; and (3) that the defendants accepted the benefit with the knowledge, actual or chargeable, of the claimant's reasonable expectation.'").

The Magna Parties argue that ICS' counterclaim of quantum meruit and unjust enrichment should be dismissed because it is duplicative of ICS' breach of contract claim. (Magna Parties' Mem. in Supp. at 19–20). In response, ICS argues that "where, as here, the facts show there may be a dispute over whether there exists an express contract (or multiple express contracts) governing all aspects of the parties' contractual relationship, pleading a claim of quantum meruit in the alternative is appropriate." (ICS' Mem. in Opp'n at 9). The Magna Parties do not dispute ICS'

---

[8] Under both New York and Massachusetts law, claims for quantum meruit and unjust enrichment are often treated as the same. *See Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 272 (E.D.N.Y. 2019) (finding New York law allows "[c]laims for unjust enrichment and quantum meruit [to] . . . be analyzed as a single quasi-contract claim."); *Scarpaci v. Lowe's Home Ctr., LLC*, 212 F. Supp. 3d 246, 253 n. 8 (D. Mass. 2016) (quoting *SAR Grp. Ltd. v. E. A. Dion, Inc.*, No. 10-P-69, 2011 WL 2201063, at *6 (Mass. App. Ct. June 8, 2011)) ("'[U]nder Massachusetts law, a claim for unjust enrichment and quantum meruit are treated similarly and have the same elements.'"). Because the parties follow this pattern, the Court will do so as well.

characterization of the rule, but instead argue that there is no dispute about "the existence and enforceability of a contract covering this dispute." (Magna Parties' Mem. in Reply at 6). In support of this argument, the Magna Parties cite the fact that each party has brought breach of contract claims against each other. (*Id.*).

ICS is correct that "[w]here the existence of a contract is in dispute, the plaintiff may allege a cause of action to recover in quantum meruit as an alternative to a cause of action alleging breach of contract." *Thompson*, 141 A.D.3d at 643–44; *Zelby Holdings, Inc.*, 82 N.E.3d at 1073–74 (reversing lower court's dismissal of unjust enrichment claim, finding that pleading unjust enrichment in the alternative to breach of contract appropriate). Moreover, the Magna Parties' argument that there is no dispute about the existence of a contract between the parties is not compelling. The fact that both parties bring a breach of contract claim does not foreclose the possibility of disputes about the existence of a contract or contracts between the parties. Moreover, the Court finds suspect the Magna Parties' argument that ICS' quantum meruit and unjust enrichment counterclaim is improper given that the Magna Parties themselves bring both a breach of contract claim and an unjust enrichment claim against ICS in their Complaint. (*See* Compl. ¶¶ 11–43; 59–66). If the Magna Parties truly believed that there was no dispute as to the existence of a contract between the parties, they would not have brought their unjust enrichment claim in the first place.

More importantly, evidence of a dispute regarding the existence and terms of a contract is born out in the pleadings and briefings. While there is some agreement between the parties as to the initial contract in January 2016, the terms governing the relationship after that are in dispute. For example, the Magna Parties argue that after the initial contract, the parties entered into an implied in fact contract for a specific deliverable—that is, the working software. (Compl. ¶ 45).

Yet ICS argues that after the initial contract, the parties "operate[d] on a time and materials basis." (ICS' Mem. in Opp'n at 3). Further, ICS alleges it attempted multiple times, to no avail, to get Magnacoustics to delineate the relationship between the parties. *(See, e.g.*, Third-Party Compl. & Countercl. ¶¶ 26, 41–46; 68). During this time, ICS alleges that "the parties . . . argue[d] over . . . whether the parties even had a contractual agreement in place." (Third-Party Compl. & Countercl. ¶ 45). Taking these allegations as true and making all reasonable inferences in favor of ICS, as is required at the motion to dismiss stage, these allegations are enough to establish potential disputes as to the existence and terms of any contracts governing the parties' relationship. As such, the Magna Parties' motion to dismiss the counterclaim for quantum meruit and unjust enrichment is denied.

## CONCLUSION

For the reasons discussed above, the Court (1) grants the ICS Parties' motion to dismiss Magnacoustics' fraudulent inducement claim and (2) grants in part and denies in part the Magna Parties' motion to dismiss ICS' Third-Party Complaint and certain counterclaims. Magnacoustics' fraudulent inducement claim and ICS' Third-Party Complaint are both dismissed. However, the Court grants both parties leave to replead with sufficient allegations. ICS' counterclaims against Magnacoustics for (1) quantum meruit and unjust enrichment and (2) breach of the covenant of good faith and fair dealing may proceed.

SO ORDERED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: July 17, 2020
Brooklyn, NY